JLW: USAO#2022R00427
MPP 08/21/2025

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO.** JKB 25-cr-262 |
| | * | |
| v. | * | (Wire Fraud, 18 U.S.C. § 1343; |
| | * | Forfeiture, 18 U.S.C. § 981(a)(1)(C), 28 |
| **NATONIA JOHNSON,** | * | U.S.C. § 2461(c)) |
| a/k/a "Natonia Jones" | * | |
| | * | |
| **Defendant.** | * | |

*****

**INFORMATION**

**COUNT ONE**
**(Wire Fraud)**

The United States Attorney for the District of Maryland charges:

At all times material to this Information:

1. Defendant **NATONIA JOHNSON** ("**JOHNSON**") was a resident of Maryland.

2. The Maryland Department of Labor ("MD-DOL") was the state workforce agency ("SWA") that operated the unemployment insurance ("UI") system in Maryland.

3. Company #1 provided professional support services related to UI benefits to MD-DOL. Contractors and agents of Company #1, including **JOHNSON**, had access to computers that they used for specialized access to MD-DOL online data and databases. The MD-DOL access was supposed to be used to review UI applications and administer UI benefits consistent with MD-DOL policies.

4. MD-DOL UI claims were received by MD-DOL using computer servers located in Maryland and were transmitted by interstate wire communications to servers outside of Maryland. Interstate wire communications also occurred when certain changes were made to existing MD-

1

DOL UI claims.

5. Co-conspirator D.B. was a resident of Maryland.

### Background on State Unemployment Insurance

6. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 to provide emergency financial assistance to Americans suffering from the economic consequences of the coronavirus disease ("COVID-19").

7. UI was a joint state and federal program that provided monetary benefits to eligible beneficiaries. UI payments were intended to provide temporary financial assistance to lawful workers who were unemployed through no fault of their own. Beginning in or around March 2020, in response to the COVID-19 pandemic, several federal programs expanded UI eligibility and increased UI benefits, including the Pandemic Unemployment Assistance Program (PUA), Federal Pandemic Unemployment Compensation (FPUC), and the Lost Wages Assistance Program (LWAP). Although states administered their respective UI programs, they did so in accordance with federal laws and regulations. Generally, UI benefits were paid weekly based on a percentage of wages earned over a time period.

8. In Maryland, those seeking UI benefits submitted online applications. Applicants had to answer specific questions to establish eligibility to receive UI benefits, including their name, Social Security number, and mailing address, among other things. Applicants also had to self-certify that they met a COVID-19-related reason for being unemployed, partially employed, or unable to work. MD-DOL relied upon the information in the application to determine UI benefits eligibility. MD-DOL would typically flag or place holds on an individual's UI claims once MD-DOL determined that they were ineligible to receive UI funds. Those holds were recorded and maintained in MD-DOL's online database. Once an application was approved, the MD-DOL typically distributed state and federal UI benefits electronically, often through a direct deposit to a

bank account or through a debit card.

### The Scheme to Defraud

9.  Beginning on or about June 1, 2020 and continuing until in or about November 30, 2021, in the District of Maryland and elsewhere, the defendant,

**NATONIA JOHNSON,**

did knowingly and willfully devise a scheme and artifice to defraud the United States and MD-DOL to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme to defraud, did knowingly and willfully transmit and cause to be transmitted by means of wire communications, in interstate commerce, certain writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343 ("the scheme to defraud").

### The Object of the Scheme to Defraud

10. It was the object of the scheme to defraud for **JOHNSON** to personally enrich herself and others by fraudulently obtaining funds belonging to and under the control of MD-DOL.

### Manner and Means of the Scheme to Defraud

It was part of the scheme to defraud that:

11. **JOHNSON** assisted co-conspirators in creating fraudulent documents to submit to MD-DOL in support of fraudulent UI claims.

12. **JOHNSON** recorded the names and Social Security numbers of the individuals she assisted in uploading fraudulent documents and maintained pictures of these fraudulent documents in her phone and email account.

13. **JOHNSON** possessed and used a computer that Company 1 had issued to her and that Company 1 intended to be used for legitimate work on behalf of the MD-DOL.

14. **JOHNSON** used the computer issued by Company 1 to access nonpublic UI data

and databases maintained by the MD-DOL.

15. **JOHNSON** used her special access to MD-DOL data and databases to change information on existing UI claims, including the contact email address, supporting documents, and eligibility of individuals with existing UI claims.

16. **JOHNSON** used her special access to MD-DOL data and databases to remove MD-DOL flags and holds on particular accounts that indicated those accounts were ineligible to receive UI benefits, including indicators that claims were fraudulent or that claimants had worked during the time period the accounts were requesting UI benefits.

17. **JOHNSON** made and caused to be made materially false and fraudulent pretenses, representations, and promises to the MD-DOL, including false representations as to an applicant's identity, employment status, work history, wages, and eligibility for benefits.

18. **JOHNSON** made and caused to be made the above misrepresentations to the MD-DOL on behalf of co-conspirators in exchange for illicit payments from co-conspirators.

19. **JOHNSON** used her special access to MD-DOL data and databases to upload and approve certain documents submitted in support of UI claims, remove fraud holds on UI claims, make weeks of UI benefits available for certification, and engage in other actions to facilitate the payment of fraudulent UI benefits on behalf of co-conspirators in exchange for illicit payments from co-conspirators.

20. **JOHNSON**, on behalf of her co-conspirators, obtained and attempted to obtain more than $250,000 in the aggregate through materially false and fraudulent pretenses, representations, and promises regarding UI benefit applications.

## THE CHARGE

21. On or about August 20, 2021, in the District of Maryland and elsewhere, the defendant,

**NATONIA JOHNSON,**

for the purpose of executing and attempting to execute the scheme and artifice to defraud described above, did knowingly transmit and cause to be transmitted in interstate commerce by means of wire communication, certain signals, signs, and sounds, to wit: **JOHNSON** altered Co-conspirator D.B.'s UI claim data within the MD-DOL database in order to allow Co-conspirator D.B. to receive $18,665 in fraudulent UI benefits, resulting in an interstate wire communication from Maryland to a location outside of Maryland.

18 U.S.C. § 1343

## FORFEITURE ALLEGATION

The United States Attorney for the District of Maryland further finds that:

1. Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as a part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of the defendant's conviction in the offense alleged in Count One of this Indictment.

### Wire Fraud Forfeiture

2. Upon conviction of the offense alleged in Count One of this Indictment, the defendant,

**NATONIA JOHNSON,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such offense.

### Substitute Assets

1. If, as a result of any act or omission of the defendant, any of the property described above as being subject to forfeiture:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third person;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property that cannot be subdivided without difficulty;

the United States shall be entitled to forfeiture of substitute property up to the value of the forfeitable property described above pursuant to 21 U.S.C. § 853(p) and 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

Kelly O. Hayes
United States Attorney