hmg.7.16.25



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

✓ FILED ___ ENTERED
___ LOGGED ___ RECEIVED
2:59 pm, Sep 17 2025
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ____TTD____ Deputy

---

| | | | |
|---|---|---|---|
| *Joseph L. Wenner*<br>*Assistant United States Attorney*<br>*Joseph.Wenner@usdoj.gov* | *Mailing Address:*<br>*6500 Cherrywood Lane, Suite 200*<br>*Greenbelt, MD 20770-1249* | *Office Location:*<br>*6406 Ivy Lane, 8th Floor*<br>*Greenbelt, MD 20770-1249* | *DIRECT: 301-344-0863*<br>*MAIN: 301-344-4433*<br>*CELL: 443-831-6983* |

July 28, 2025

Stuart A. Berman
Lerch, Early & Brewer, Chtd.
7600 Wisconsin Ave, Suite 700
Bethesda, MD 20814

> Re: <u>United States v. Natonia Johnson,</u>
> Criminal No. <u>JKB-25-cr-262</u>

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Natonia Johnson (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by August 26, 2025, it will be deemed withdrawn. The terms of the Agreement are as follows:

<u>Offense of Conviction</u>

1.     The Defendant agrees to waive indictment and plead guilty to a One Count Information, which will charge the Defendant with Wire Fraud, in violation of 18 U.S.C. § 1343. The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

<u>Elements of the Offense</u>

2.     The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Information, in the District of Maryland,

    a.  Count One – Wire Fraud, 18 U.S.C. § 1343

        i.  There was a scheme or artifice to defraud or to obtain money or property by materially false and fraudulent pretenses, representations or promises, as alleged in the Information;

ii. The Defendant knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud; and

iii. In execution of that scheme, the Defendant used or caused the use of the interstate wires as specified in the Information

<u>Penalties</u>

3.      The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|-------|---------|----------------|----------------|--------------------|--------------|--------------------|
| 1 | 18 U.S.C. § 1343 | N/A | 20 years | 3 years | $250,000 or twice the gross gain (or loss) from the offense | $100 |

a.      Prison:  If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.      Supervised Release:  If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.      Restitution:  The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d.      Payment:  If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d).  The Defendant may be required to pay interest if the fine is not paid when due.

e.      Forfeiture:  The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.      Collection of Debts:  If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt.  If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law.  Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant

exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

Waiver of Rights

4.     The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.     If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.     If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.     The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.     If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts

3

of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

        g.     If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

        h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

<u>Advisory Sentencing Guidelines Apply</u>

     5.     The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

<u>Factual and Advisory Guidelines Stipulation</u>

     6.     This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

        a.     <u>Count One (Wire Fraud)</u>

            i.     This Office and the Defendant agree that applicable base offense level is **7** pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2B1.1(a)(1)

           ii.     The offense level is increased an additional **12** levels, pursuant to U.S.S.G. § 2B1.1(b)(1)(G), because the loss in this case was more than $250,000, but less than $500,000 (subtotal: level 19)

     iii.  The offense level is increased by two (2) levels, pursuant to U.S.S.G. § 3B1.3, because the Defendant abused the Defendant's position of trust as a representative of the Maryland Department of Labor to commit the offense. (subtotal: level 21)

     b.  This Office does not oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1**-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

     c.  The Government will not oppose a two-level downward adjustment if the Court determines that the Defendant meets the criteria listed in U.S.S.G. § 4C1.1.

7.    There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

8.    Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

Obligations of the Parties

9.    At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Information. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

### Waiver of Appeal

10.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

      a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever.  This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

      b.     The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: the Defendant reserves the right to appeal any sentence that exceeds the statutory maximum.

      c.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Restitution

11.     The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses, which the Defendant stipulates is at least $250,000. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

### Forfeiture

12.    The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

13.    Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities:  no less than $7,300.

14.    The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.  This Office agrees to seek the Attorney General's approval to apply forfeited assets to the Defendant's Restitution Order.

15.    The Defendant agrees to assist fully in the forfeiture of the above property.  The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

16.    The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint.  The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

### Defendant's Conduct Prior to Sentencing and Breach

17.    Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

18.    If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may

make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

<u>Court Not a Party</u>

19.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

<u>Entire Agreement</u>

20.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Kelly O. Hayes
United States Attorney

Digitally signed by JOSEPH WENNER
Date: 2025.07.28 16:05:34 -04'00'

Joseph L. Wenner
Assistant United States Attorney

8

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

8|20|25
Date

_____
Natonia Johnson

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

8/20/25
Date

_____
Stuart A. Berman, Esq.

9

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Natonia Johnson ("Johnson") was a resident of Baltimore, Maryland. Between in or about June 1, 2020 and continuing until in or about November 30, 2021, Johnson executed a scheme to defraud the Maryland Department of Labor ("MD-DOL") and the United States, by assisting friends, family members, and strangers fraudulently file and obtain, and seek to obtain, unemployment insurance ("UI") they were not allowed to receive in exchange for bribes and kickback payments. At first, Johnson assisted individuals in uploading fraudulent documents in support of UI claims, falsely asserting that these individuals were self-employed. Later, through her employment as a contractor at Company #1, Johnson staffed MD-DOL's UI call center and gained access to MD-DOL's internal UI database. Johnson used this access to remove flags and holds on various co-conspirators' UI accounts that established that these individuals were ineligible to receive UI benefits. Johnson would also backdate claims, remove fraud holds, and cause MD DOL to issue additional UI benefits that these co-conspirators were ineligible to receive. In exchange, Johnson received between $200 and $500 from each co-conspirator whose claims she assisted. To execute and attempt to execute this scheme to defraud, Johnson knowingly and willfully transmitted and caused to be transmitted by means of wire communications, in interstate commerce, writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343, including an interstate wire from Maryland to another state when she altered Co-conspirator D.B.'s UI claim data in order to allow Co-conspirator D.B. to receive $18,665 in fraudulent UI benefits. In total, Johnson defrauded the MD-DOL of over $250,000 in UI claims that MD-DOL paid due to Johnson's conduct. Johnson personally obtained at least $7,300 from her scheme.

### *The Unemployment Insurance System*

The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 to provide emergency financial assistance to Americans suffering from the economic consequences of the coronavirus disease ("COVID-19").

UI was a joint state and federal program that provided monetary benefits to eligible beneficiaries. UI payments were intended to provide temporary financial assistance to lawful workers who were unemployed through no fault of their own. Beginning in or around March 2020, in response to the COVID-19 pandemic, several federal programs expanded UI eligibility and increased UI benefits, including the Pandemic Unemployment Assistance Program (PUA), Federal Pandemic Unemployment Compensation (FPUC), and the Lost Wages Assistance Program (LWAP). Although states administered their respective UI programs, they did so in accordance with federal laws and regulations. Generally, UI benefits were paid weekly based on a percentage of wages earned over a time period.

In Maryland, those seeking UI benefits submitted online applications. Applicants had to answer specific questions to establish eligibility to receive UI benefits, including their name, Social Security number, and mailing address, among other things. Applicants also had to self-certify that they met a COVID-19-related reason for being unemployed, partially employed, or unable to work. MD-DOL relied upon the information in the application to determine UI benefits eligibility. MD-DOL would typically flag or place holds on an individual's UI claims once MD-DOL determined that they were ineligible to receive UI funds. Those holds were recorded and maintained in MD-DOL's online database. Once an application was approved, MD-DOL typically distributed state and federal UI benefits electronically, often through a direct deposit to a bank account or through a debit card.

### *Company #1*

Company #1 provided professional support services related to UI benefits to the MD-DOL. Contractors and agents of Company #1, including Johnson, had access to computers that they used for specialized access to MD-DOL online data and databases. The MD-DOL access was supposed to be used to review UI applications and administer UI benefits consistent with MD-DOL policies. Johnson worked remotely for Company #1 from in or about February 2021 through November 2021. Johnson worked on MD-DOL matters for Company #1 during the entirety of her employment for Company #1. Pursuant to her employment with Company #1, Johnson was issued a Company #1 laptop. The laptop had software and encryption that allowed it to remotely access MD-DOL servers, including the MD-DOL BEACON system, which handled UI claims.

### *Johnson's Initial Fraudulent Conduct*

In or about June and July 2020, Johnson assisted individuals upload fraudulent documents to the MD-DOL BEACON system and file fraudulent UI claims. During the COVID-19 pandemic, self-employed individuals became eligible for expanded UI benefits under PUA. Johnson helped others exploit this emergency program by falsely asserting in their applications that they had been self-employed as barbers prior to the pandemic. Johnson used her personal email address "natoniajones@gmail.com" to open and submit multiple applications on behalf of others. These applications all asserted identical information: specifically, that the claimant had been a barber, that they could not operate their business as a result of the pandemic, and that they had earned $4,500 per month. Johnson further helped these individuals upload pictures of signed handwritten notes asserting the above identical information. A search of "natoniajones@gmail.com" and Johnson's personal phone revealed the same pictures that Johnson had helped upload to BEACON. Johnson also recorded the names and Social Security numbers of the individuals she assisted in uploading fraudulent documents. Multiple individuals received fraudulent UI benefits as a result of Johnson's assistance and the fraudulent documents she uploaded.

### *Johnson's Abuse of MD-DOL Database Access*

Beginning in or about February 2021 and continuing through in or about November 2021, abused her position at Company #1 and her access to MD-DOL's databases by authorizing ineligible UI claims in exchange for illicit payments from the UI recipients. Johnson's own texts, bank records, and MD-DOL account access records document her fraudulent conduct. While she

11

initially processed claims for friends and family members, she eventually began receiving texts from strangers asking for her help. Sometimes would-be co-conspirators would try to contact Johnson after being referred to her by others.

Johnson would typically solicit and receive a $200-$500 bribe from these co-conspirators depending on how much work she needed to do in the MD-DOL BEACON system to release the UI claims. In exchange, Johnson would remove disqualifying issue "tags" and "holds" in MD-DOL's databases that had been preventing these co-conspirators from receiving UI benefits. Johnson knew that restrictions were in place because these co-conspirators were ineligible for UI benefits. The restrictions that Johnson removed included flags for fraud, indicators that the individual was ineligible for UI benefits due to current their employment or prior voluntary termination, and identity verification tags. Johnson would also retroactively certify prior weeks of UI claims, allowing individuals to receive UI payments for weeks during which they had been employed.

For example, in one instance, Johnson assisted Co-conspirator F.T. obtain UI benefits for the friend's brother, X.T., who was incarcerated before and during the COVID-19 pandemic. Johnson knew that X.T. was incarcerated and that incarcerated individuals were ineligible to receive UI benefits. Nevertheless, using her MD-DOL database access, Johnson edited and submitted a fraudulent U.I. application for X.T., which falsely claimed that X.T. was a self-employed barber. After Johnson submitted an early version of the application, X.T.'s sister responded to Johnson: "Ok i hope it works. . . . I'm tired of paying for his lawyer lol that money will." As a result of Johnson's manipulations, X.T. received $17,404.00 in fraudulent UI benefits for weeks from March 2020 to August 2021; X.T. was incarcerated throughout this period. Later, in a voluntary interview with investigators, Johnson falsely stated that she never filed claims for anyone in jail.

Similarly, Johnson assisted Co-conspirator D.B. obtain UI benefits for which he was ineligible. In exchange for payment from Co-conspirator D.B., Johnson removed a disqualification hold on his UI claims using her access to the MD-DOL database. When Co-Conspirator D.B. texted Johnson and asked her to remove his hold, Johnson replied that "I can fix that" but made clear that "I charge for that." After looking at Co-Conspirator D.B.'s record in MD-DOL's database, Johnson saw that Co-Conspirator D.B. had been ruled disqualified from UI benefits because had been terminated from a prior job for misconduct. Nevertheless, Johnson removed this disqualification from Co-conspirator D.B.'s account in MD-DOL's database. This caused an electronic signal to be sent from Maryland to MD-DOL servers outside of Maryland. After she did so, she texted Co-conspirator D.B.: "You['re] disqualified but I['ve] taken it out of there now." Co-conspirator D.B. subsequently paid Johnson $300 via CashApp. As a result of Johnson's manipulations, Co-conspirator D.B. received $18,655 in fraudulent UI payments.

SO STIPULATED:

Natonia Johnson
Defendant

Stuart A. Berman, Esq.
Counsel for Defendant

Digitally signed by JOSEPH
WENNER
Date: 2025.07.28 16:06:03
-04'00'

Joseph L. Wenner
Assistant United States Attorney